**Richard JONES and Howard Jones, Appellants,**

v.

**Violet BRASHEARS and Butler County Publishing Inc., A Missouri Corporation d/b/a The Daily American Republic, Respondents.**

No. 25077.

Missouri Court of Appeals,
Southern District,
Division One.

April 23, 2003.

Motion for Rehearing or Transfer Denied
May 16, 2003.

Application for Transfer Denied
July 1, 2003.

John M. Albright, Moore, Walsh & Albright, L.L.P., Poplar Bluff, for appellants.

Matthew D. Richardson, Poplar Bluff, for Respondent Violet Brashears.

Dale E. Gerecke, Bradshaw, Steele, Cochrane & Berens, L.C., of Cape Girardeau, for Respondent Butler County Publishing Inc. d/b/a the Daily American Republic.

KERRY L. MONTGOMERY, Presiding Judge.

Richard and Howard Jones (Plaintiffs) sued Violet Brashears (Brashears) and Butler County Publishing, Inc., d/b/a The Daily American Republic (DAR) for wrongful death of their father, James Jones, as a result of an automobile collision with Brashears, who was delivering DAR's newspapers at the time of the collision. The trial court granted DAR's motion for summary judgment and Plaintiffs' appeal.

Violet Paynter signed a one-year contract with DAR to deliver its newspapers. At the time Ms. Paynter signed the Motor Route Delivery Agreement (Contract), she was anticipating a layoff from her then current job. Because Ms. Paynter was still employed, her mother, Brashears, agreed to deliver the newspapers until her anticipated layoff occurred. Ms. Paynter planned to assist her mother with the delivery route after she was laid off.

On January 7, 2000, Brashears was delivering newspapers on the route stated under the Contract when she was involved in an automobile accident with Plaintiffs' father. Plaintiffs filed a petition for wrongful death and claimed that Brashears and DAR were "engaged in a joint venture." Further, Plaintiffs claimed Brashears was a "servant, employee and agent" of DAR. Plaintiffs sought vicarious liability recovery from DAR under the theory of *respondeat superior*.

DAR moved for summary judgment on the grounds that Brashears was an employee of Violet Paynter, who under the Contract with it, was an independent contractor. The trial court sustained DAR's motion holding that when comparing the important factors in *Hougland v. Pulitzer Pub. Co., Inc.*, 939 S.W.2d 31 (Mo.App. 1997) to this case, "this Court can not find enough of a difference to find that Violet Brashears was an employee."

Plaintiffs raise only one point on appeal. They contend that the trial court erred in granting summary judgment because a genuine issue of material fact existed as to whether a master-servant relationship ex-

isted between Violet Brashears and DAR. Plaintiffs assert that they offered facts showing that DAR (1) exercised control of Violet Brashears by directing the starting location, starting time, the specific route, and the specific stops; (2) trained the drivers when hired as to the route; (3) provided the only tools necessary to perform the work; (4) and supervised ongoing performance by requiring the drivers to submit reports and solicited subscriber complaints regarding the drivers.

■■■■ In considering an appeal from an entry of a summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *Burks v. City of Licking*, 980 S.W.2d 109, 110 (Mo.App.1998); *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo* as we employ the same tests as should be employed by the trial court in deciding whether to grant the motion. *Id.* The propriety of a summary judgment is purely an issue of law. *Daniels v. Senior Care, Inc.* 21 S.W.3d 133, 134 (Mo.App. 2000). Summary Judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.;* Rule 74.04(c)(3). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380.

In its motion for summary judgment, DAR alleged the following facts. Ms. Paynter was paid no benefits, including worker's compensation, health or life insurance, retirement benefits, disability benefits or vacation days. Ms. Paynter received a 1099 for tax purposes, and no social security taxes were withheld from her checks. Under the Contract, Ms. Paynter could deliver and sell newspapers for other competing newspapers in addition to its newspaper, and there was no contract not to compete. In addition, Ms. Paynter could work in any other type of business under her Contract as long as it did not interfere with her newspaper delivery route. Ms. Paynter was paid an additional commission for signing up new subscribers. Ms. Paynter posted a $600 security bond with DAR and was penalized when she abandoned the motor delivery route. `Under the Contract, Ms. Paynter was prohibited from putting any kind of slogan, trademark, trade name or logos belonging to DAR on any vehicle used in her newspaper delivery business. Plaintiffs admitted all of these facts.

DAR also alleged numerous other facts in its motion that Plaintiffs denied. DAR alleged that Ms. Paynter was paid by commission and not by the hour or a set salary. DAR further alleged that Ms. Paynter did not have to work any certain hours and did not have to keep track of her hours for DAR. Plaintiffs controvert these alleged facts with Brashears' deposition testimony that DAR paid both a fixed rate per newspaper, together with a fixed rate for newspaper drops, such as grocery stores and a route delivery fee, and that the newspapers had to be picked up between 12:00 and 12:30 p.m. and had to be delivered by 5:00 p.m.

DAR further alleged that Ms. Paynter had to pay DAR for any supplies she needed to run her newspaper delivery business. Plaintiffs controvert this alleged fact by showing that DAR supplied the metal stakes and delivery tubes as well as the "post pounder" to set the stakes and sold plastic bags and rubber bands at one-third their cost to Ms. Paynter. DAR alleged that Ms. Paynter was required to use her own vehicle in her newspaper delivery business, to pay all maintenance on her vehicle, and to purchase her own auto-

mobile insurance. Plaintiffs controvert this alleged fact as Ms. Paynter has never had a driver's license and it was her mother, Brashears, who presented the necessary proof of an automobile and insurance.

Plaintiffs asserted additional material facts that DAR provides a ride-along for new drivers and a cassette tape of the route instructing new drivers as to the route. DAR further instructs drivers on whether the paper is to be delivered in the yard or the delivery tube. DAR determines what area constitutes the route, that is, it decided what roads will be assigned to which routes. Further, Plaintiffs alleged that 93.25% of DAR's newspapers are delivered by drivers, which indicated that the drivers are an integral part of DAR's business.

 The doctrine of *respondeat superior* imposes upon an employer vicarious liability for negligent acts or omissions of his employee or agent that are committed within the course and scope of his employment or agency. *Wilson v. St. Louis Area Council, Boy Scouts of America*, 845 S.W.2d 568, 570 (Mo.App.1992). Whether an employer can be held liable under the doctrine requires evidence that a master-servant relationship existed between the parties. *Id.*

 " 'Generally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship.' " *Bargfrede v. American Income Life Ins. Co.*, 21 S.W.3d 157, 161 (Mo.App.2000) (*quoting Johnson v. Bi-State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990)). " 'The employment relation is a question of law for the court *only* where the material facts from which it is to be inferred are not in dispute and *only* one reasonable conclusion can be drawn there-

from.' " *Id.* (*quoting Smoot v. Marks*, 564 S.W.2d 231, 236 (Mo.App.1978)). " 'Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled.' " *Daniels*, 21 S.W.3d at 138 (*quoting Birdsong v. Christians*, 6 S.W.3d 218, 224 (Mo.App.1999)). Only when the facts are undisputed may the trial court declare as a matter of law that one is or is not an independent contractor. *Hougland*, 939 S.W.2d at 33.

 "Whether a party is liable under the doctrine of *respondeat superior* depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and his right of control." *Wilson*, 845 S.W.2d at 571.

The Restatement (Second) of Agency § 220(2) (1958) lists the following factors to aid in "determining whether one acting for another is a servant or independent contractor:"

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of operation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by time or by the job;

(h) whether or not the work is part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Carter v. Wright,* 949 S.W.2d 157, 160 (Mo. App.1997). "None of these elements alone is conclusive, and all must be viewed to see whether control, or the right to control, has been retained over the alleged servant's physical conduct and the details of the work." *Id.*

Viewing the evidence in the light most favorable to the Plaintiffs, the following supports a finding that a question of material fact exists as to the existence of an agency relationship. First, the Contract between Ms. Paynter and DAR required the delivery of newspapers six days a week, Monday through Saturday. The record indicated that the drivers had created an informal system of when each driver should be at DAR's press facility to pick up their newspapers. Brashears generally arrived at 1:00 p.m. to pick up the correct amount of newspapers for her route. She was required to submit a monthly report regarding the number of newspapers delivered. The route she traveled was dictated by DAR and was subject to change if the circulation manager determined that a change would be more efficient. Upon request, DAR provided a supervisor, who would ride along with a new driver to show her the route. Also upon request, DAR would provide a cassette tape, which instructed new drivers on the various turns, stops, et cetera. If a change did occur in the delivery route, then DAR would notify the driver by plac-ing a note in her newspaper bundle. The Contract required that the newspapers be delivered by 5:00 p.m. during the weekday. The Contract further required the drivers to install motor route tubes at locations designated by DAR for an additional payment of $1 per tube. In addition, DAR solicited complaints from subscribers regarding their satisfaction with the delivery service. This evidence tends to demonstrate sufficient control over work days and hours, as well as control over the timeliness of deliveries and the specific route, as to raise a question of material fact as to whether an agency relationship existed.

Second, the parties contemplated a long-term relationship. The Contract signed by Ms. Paynter was for a period of one year. The Restatement provides that "[i]f the time of employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him." Restatement, *supra,* § 220, comment j. Likewise, a longer term of employment denotes an employer-employee relationship as being more likely. *Ferguson v. Pony Exp. Courier Corp.,* 898 S.W.2d 128, 132 (Mo.App.1995).

Third, DAR retained the right to terminate its Contract with Ms. Paynter. Although either party could terminate the Contract with or without cause, upon thirty days' notice, only DAR could terminate without any prior notice. " 'Closely allied to the power of control is the ability to *enforce* orders in regard to the manner of performance, usually the right to fire the employee....' " *Keller v. Missouri Baptist Hosp. of Sullivan,* 800 S.W.2d 35, 39 (Mo.App.1990) (*quoting Coble v. Economy Forms Corp.,* 304 S.W.2d 47, 52 (Mo.App. 1957)).

Fourth, the record supports a finding that little skill was required for the duties performed by DAR's delivery drivers and that it provided some of the instrumentalities necessary for the job. As noted in *Carter*, "[t]here is no special aptitude necessary to drive a truck up to a pile of sheetrock, load it on the truck, drive the truck to a place pointed out, and dump it as directed." 949 S.W.2d at 161. Likewise, we can see no special skill that is required to drive a vehicle, load newspapers into the vehicle, stop at each required stop and either place a newspaper in a tube, in a vending machine, or throw a newspaper in the vicinity of a house. "[W]ork which does not require the services of one highly educated or skilled" is a factor indicating a master-servant relationship. Restatement, *supra*, § 220, comment h.

Although each driver, including Ms. Paynter, had to supply a vehicle, back-up vehicle, and proof of automobile insurance, DAR provided at no cost the post, tube, and post pounder to set motor route tubes. Further, DAR provided rubber bands and plastic bags to its drivers at a discounted rate. The Contract required that Ms. Paynter use only plastic bags or covers provided by DAR. This fact tends to controvert DAR's allegation that they did not control how the newspapers were delivered. The cost of these items was deducted from Ms. Paynter's paycheck.

Finally, evidence indicated that the newspaper delivery drivers accounted for 93.25% of all DAR's delivered newspapers. This indicates that the newspaper delivery drivers' work was part of the regular business of DAR. Work that is part of the regular business of an employer is a factor which is indicative of a master-servant relationship. Restatement, *supra*, § 220, comment h.

The trial court relied on *Hougland* to support the grant of summary judgment. We find that case distinguishable from the case at hand. In *Hougland*, the trial court based its decision on interpreting the contract provisions after reviewing the transcript and finding that none of the witnesses' testimony disputed or called into question the terms of the contract. 939 S.W.2d at 33. Here, what actually occurred in practice and what was stated in the contract created a factual issue for resolution by a trier of fact.

When considered together, all of these factors are sufficient to raise a question of material fact as to DAR's vicarious liability as an employer. Therefore, the trial court erred in sustaining DAR's motion for summary judgment.

The trial court's order granting summary judgment in favor of DAR is reversed and the cause is remanded for further proceedings.

GARRISON and BARNEY, JJ., concur.